Kenneth BOROVINA, Plaintiff,

v.

Charles SCULLY, Superintendant, Green Haven Correctional Facility, Defendant.

No. 83 Civ. 6095 (WK).

United States District Court, S.D. New York.

April 24, 1984.

Kenneth Borovina, pro se.

Office of the Dist. Atty., County of N.Y., New York City by Mark Dwyer, Norman Barclay, Asst. Dist. Attys., for defendant.

## MEMORANDUM & ORDER

KNAPP, District Judge.

Kenneth Borovina, proceeding *pro se*, petitions for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254. For the reasons that follow, we deny the writ.

Petitioner and his co-defendants were convicted, following a jury trial in the New York Supreme Court, New York County (Kassal, J.) of two counts of murder in the second degree, one count of burglary in the second degree, and two counts of criminal possession of a weapon in the second degree. He was sentenced on February 10, 1977 to an indeterminate prison term of eighteen years to life. He appealed to the Appellate Division, First Department, which affirmed the conviction without opinion on July 18, 1978. Leave to appeal to the Court of Appeals was denied on October 5, 1978.

■ Petitioner asserts three grounds for federal habeas relief. First, we will address petitioner's claim that the evidence at trial was insufficient to prove his guilt beyond a reasonable doubt. The record reveals that on October 20, 1975, petitioner and his co-defendants Kenneth Grochulski and John Ek, together with Karen Smagalla (who later turned prosecution witness), planned to rob Robert Kortright, a reputed drug dealer at his apartment on the lower east side of Manhattan. However, having ascertained through Smagalla's inquiries that Kortright had no cash at his apartment, the conspirators decided to rob Kortright's parents in the hope that Kortright had hidden his money in their apartment. The three men, each armed, entered the parents' apartment and held the family at gunpoint while they searched for the supposed cache of money. As Angel Kortright (Robert's father) tried to rise from a bed on which he was held captive, Grochulski shot and fatally wounded him. The three men then ran from the apartment and drove off with Smagalla.

Several days later Smagalla enlisted three different men—Robert Baron, Peter Janulius and Danny Cusick—to attempt another robbery of Robert Kortright. On October 25, 1975, the three men together with Smagalla drove to Kortright's apartment, wounded him in the robbery attempt and fled.

Much of the prosecution's evidence of the two crimes was provided through the testimony of Karen Smagalla who, as noted above, turned prosecution witness. Her testimony was strongly supported by eyewitness and pre-trial identification testimony of the victims of the first robbery. Petitioner's alibi was that he was with JoAnn Anzano on the night of the first robbery. Anzano testified that she met regularly with petitioner on the 20th of each month to celebrate the anniversary of their first meeting. Anzano stated that she had visited petitioner in jail several times before trial without discussing his alibi or the charges against him. Once the trial began, she realized the significance of their date on October 20, 1975 and offered to testify. Yet, when questioned, she could not remember the events of any other of their monthly "anniversaries."

In light of the testimony of Karen Smagalla, the overwhelming corroborative evidence, and the jury's obvious rejection of petitioner's alibi testimony as lacking credibility, we find that the evidence presented at trial was such that a rational jury could have found petitioner guilty beyond a reasonable doubt. *Jackson v. Virginia* (1979) 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

■ Petitioner also claims that he was denied a fair trial by the trial court's exclusion of an out of court statement which would have exonerated petitioner and his co-defendants. The essence of this claim is that he is innocent of the crime for which he and his co-defendants were convicted because it was in fact committed by the three men who were convicted of the second (October 25th) robbery. To support this claim, defense counsel attempted to introduce a transcribed statement made on February 13, 1976, in which Robert Grant told a New Jersey prosecutor that he had been at the home of Drew Jeziorski, when Robert Baron (one of the men convicted of the October 25th robbery) entered carrying a shotgun. Baron admitted to Grant that he had used the weapon in attempting to rob a Manhattan man and his son. The statement went on to say that Baron said

that he had been accompanied by two other men whose descriptions matched those of Janulius and Cusick (the two other men convicted of the October 25th robbery). The trial court ruled that the statement was inadmissible under New York evidentiary law. Petitioner cites *Chambers v. Mississippi* (1973) 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297, for the proposition that the application of New York rules of evidence resulting in the exclusion of this statement, wrongly denied him his right to present a valid defense.

This claim, however, has been rejected by the Second Circuit. One of petitioner's co-defendants, Kenneth Grochulski, raised the identical claim in a petition for habeas corpus relief. Grochulski's petition was denied on October 10, 1979 (Brieant, J.), and the denial was affirmed by the Second Circuit in *Grochulski v. Henderson* (2d Cir. 1980) 637 F.2d 50, *cert. denied* (1981) 450 U.S. 927, 101 S.Ct. 1383, 67 L.Ed.2d 358. There is no need to restate petitioner's argument here, as Judge Oakes did so, most eloquently, in his dissenting opinion in *Grochulski*, 637 F.2d at 56. We are necessarily bound to follow the Second Circuit in denying relief on this claim.

 Petitioner's third and final claim is that it was a violation of due process for the trial court to refuse to reopen the Wade hearing during trial. He claims that he was denied the opportunity to inquire into the suggestiveness of particular pre-trial photographic identification sessions that were conducted by the prosecution. At the hearing, a New York City detective testified that the prosecution had conducted photographic sessions other than those at which he was present. The judge offered defense counsel the opportunity to question the prosecutor and eye-witnesses, as adverse witnesses, concerning all photographic identifications. The defense, however, failed to take advantage of this opportunity at the hearing. Moreover, at trial, factual evidence was elicited concerning the photographic identifications in question. The court ruled that there was no reason to reopen the hearing, nor was there reason

to grant the defense motion to suppress these identifications, as there was no evidence to support a finding of suggestiveness. We find that petitioner was afforded ample opportunity to inquire into all photographic identifications and failed to prove suggestiveness when given the opportunity to do so.

For the foregoing reasons, petitioner's writ of habeas corpus is denied.

SO ORDERED.